**2015 UT App 156**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.L., D.L., AND D.L.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

T.C.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Decision
No. 20150233-CA
Filed June 18, 2015

Fourth District Juvenile Court, Provo Department
The Honorable Brent H. Bartholomew
No. 1088509

Erik G. Jacobson, Attorney for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME, J. FREDERIC VOROS JR.,
and JOHN A. PEARCE.

PER CURIAM:

¶1    T.C. (Mother) appeals the juvenile court's February 25, 2015 order placing Mother's three boys in the permanent guardianship of a non-kinship placement. Mother asserts that there was insufficient evidence to support the juvenile court's determination.

¶2    The Guardian ad Litem initially argues that this court lacks jurisdiction over the appeal because the order is not final and appealable. Specifically, the Guardian ad Litem asserts that

the February 25, 2015 order is merely an interim order that sets "a direction for the remainder of the proceedings," *see In re A.F.*, 2007 UT 69, ¶ 6, 167 P.3d 1070, rather than an order that ends the dispute between the parties. The Guardian ad Litem is incorrect. While the language of the order itself may be inartful, the Conclusions of Law, which are part of the same document, specifically state that "[i]t is reasonable and proper for the boys to be in the permanent guardianship of their current placements." Further, the transcript of the proceeding reveals that it was the juvenile court's intent that the boys' status be fully resolved while the status of two other siblings was to be resolved in a later proceeding. Thus, it is clear that the juvenile court's order granted permanent custody of the boys to their current caregivers. Accordingly, the order is final and appealable. *See id.* ¶ 10 (stating that an order converting temporary custody into permanent custody is final and appealable).

¶3 Mother asserts that there was insufficient evidence to support the juvenile court's determination to place the boys in the permanent guardianship of their current caregivers. "[I]n order to overturn the juvenile court's decision [concerning the permanent status of a child,] 'the result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 (citation omitted). We "review the juvenile court's factual findings based upon the clearly erroneous standard." *In re E.R.*, 2001 UT App 66, ¶ 11, 21 P.3d 680. A finding of fact is clearly erroneous only when, in light of the evidence supporting the finding, it is against the clear weight of the evidence. *See id.* Further, we give the juvenile court a "'wide latitude of discretion as to the judgments arrived at' based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' 'special training, experience and interest in this field.'" *Id.* (citations omitted). Finally, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not

engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12.

¶4     The evidence presented to the juvenile court supports its decision. At the time of the permanency hearing, reunification services had already been offered to Mother for the maximum statutory period. *See* Utah Code Ann. § 78A-6-312(13)(a) (LexisNexis Supp. 2014) (limiting reunification period to twelve months plus extensions allowed by the statute). Accordingly, the juvenile court could not extend the reunification period any further. Unfortunately, despite Mother's attempts to complete her service plan, Mother was not in a position to care for the boys. Mother's housing arrangements had been an issue since the beginning of the case. However, Mother admitted that after eighteen months of reunification services, she still did not have adequate housing to take care of the boys. She also had no long-term solution to resolve her housing issue. The court found that the boys needed stability and consistency. The boys were comfortable with their current non-relative placements and those placements were willing to assume permanent custody and guardianship of the boys. Accordingly, because of the boys' need for stability and Mother's failure to arrange for long-term housing, it was in the boys' best interests to convert their current placements into permanent guardianships. Additionally, the juvenile court heard evidence that in the months before the hearing, Mother had exhibited other troubling behavior. Specifically, Mother violated a no-contact order from Felony Drug Court that prohibited her from having contact with her boyfriend. She also had consumed alcohol despite undergoing substance abuse treatment. These facts support the juvenile court's decision. Because a foundation for the juvenile court's decision exists in the evidence, we may not reweigh that evidence.

¶5     Affirmed

———————